UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| STEVEN J. SHAPIRO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. MJG-02-3931 |
| | ) | |
| RAY T. BERRY and | ) | |
| BEHAVIORAL HEALTH CARE | ) | |
| MANAGEMENT SYSTEMS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S  OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE
LIABILITY FROM DAMAGES AND STAY DAMAGES DISCOVERY**

## I.    Introduction

This lawsuit arose out of a business formed by the parties.  The existence of the business is undeniable, given that funds were paid by the plaintiff to the business and the business made substantial (and even described by the business as "partial") payments to the plaintiff. Nonetheless, defendants have flouted the plaintiff's rights and are seeking to thrust any and all conceivable barriers forth to discourage the plaintiff from pursuing his claims.

This motion is the latest such effort, a transparent attempt to almost completely avoid discovery in this case.  This lawsuit has been pending for over four months, during which time plaintiff Steven J. Shapiro ("Mr. Shapiro") has assiduously – and, regrettably, unsuccessfully – pursued the discovery from the defendants to which Mr. Shapiro is entitled.  Defendants' response has been a complete stonewalling effort to refuse to disclose information relevant to both liability and damages in this case.  Now, in their latest effort to thwart Mr. Shapiro's rights, over four months into the case and after defendants have been seeking discovery since January,

defendants ask that the issues of liability and damages be bifurcated and that all damages discovery be stayed.

Defendants Ray T. Berry ("Mr. Berry") and Behavioral Health Care Management Systems, Inc. ("BHCMSI") thus seek extraordinary relief on this motion. Moreover, the relief requested is not justified on the facts, procedural posture, or any applicable law. This is not a complex case where bifurcation is appropriate, and there is no basis for any effort to segregate out "damages discovery" from "liability discovery" and to impose a stay. In fact, there is no way to identify any purely "damages discovery" so as to fashion such a stay. This motion should be denied in its entirety.

## II.    Brief Factual Summary

This case involves claims that arose initially out of an agreement between the parties to form a business. See Complaint at 1-2. The parties reached agreement on the material terms of the contract, Mr. Shapiro contributed funds and effort to the endeavor, the endeavor has been profitable, the parties have all performed (in whole or in part) various obligations under the contract, and the defendants made a partial payment to Mr. Shapiro on the contract – but, thereafter, the defendants have then attempted to deny, limit, and avoid their contractual obligations. See id.,¶¶ 8- 23. Mr. Shapiro seeks a full accounting, as well as compensatory and punitive damages and attorneys' fees and costs. See id. at 6-14.

Mr. Shapiro works for the Department of Health and Human Services. See id., ¶ 8. While with HHS, Mr. Shapiro has gained considerable knowledge and expertise in the fields of health, substance abuse, and drug education and treatment, computer information systems, and related research and development, and in the provision of related services through state, county, and municipal governments and other non-profit, private entities. See id. Mr. Shapiro has

2

specific knowledge, expertise, and contacts that defendants did not have. See id. There is nothing illegal or improper in such an arrangement, and defendants cannot cite any legal authority to the contrary.

Several years ago, Mr. Shapiro and Mr. Berry met. See id.,¶ 9. They maintained a social and professional relationship over the years. See id. In June 2000, Mr. Shapiro and Mr. Berry entered into a verbal contract under which they would form a business to provide certain services to state, county, and municipal governments. See id., ¶ 10. Mr. Shapiro would provide expertise and knowledge to the business, as well a $5,000.00 initial capital contribution. See id. Mr. Berry would also provide expertise and knowledge to the business and provide day-to-day oversight over the operations of the business. See id.

Although the parties originally discussed forming a separate entity through which to conduct their business, ultimately Mr. Berry indicated that the business would be operated initially through BHCMSI. See id.,¶ 12. In this lawsuit, BHCMSI has also accepted responsibility for all actions of Mr. Berry. See id.,¶ 4, Answer, ¶ 4. In June 2000, Mr. Shapiro paid $5,000.00 to BHCMSI, which accepted and kept the money. See Complaint, ¶ 13. A copy of the check paid by Mr. Shapiro to Mr. Berry is attached hereto and made a part hereof as Exhibit "A." Although Mr. Berry has recently alleged in discovery that this $5,000.00 was returned to Mr. Shapiro in July 2000, that assertion is false – and defendants cannot produce any canceled check to prove that claim.

With Mr. Shapiro's guidance and contributions of money and effort, the business was established and has grown and prospered. Although the full extent of the operations are not known, because the defendants have withheld that information thus far, the business landed significant contracts with at least the following: (a) a valuable subcontract with the University of

3

Maryland (worth at least $600,000.00 in gross revenue, as well as additional amounts not revealed by the defendants); (b) Bexar County, Texas; and (c) Orange County, Florida. value of these contracts is significant. One subcontractor who worked on these projects has received approximately $400,000.00 in payments. Defendants no doubt received substantial "gross profit" on these endeavors.

Discovery of relevant information in the defendants' possession, custody, or control has been prevented by the defendants' intransigence. Information relevant to liability issues as well as to the determination of the full value of Mr. Shapiro's interest in and contribution to the business has been withheld. Although Mr. Shapiro has propounded discovery requests directed at obtaining information about the parties' business that was conducted through BHCMSI, defendants have not provided information requested in discovery. Defendants sought several extensions of time to respond to Mr. Shapiro's discovery and, after Mr. Shapiro was reasonable in allowing such extensions, defendants almost wholesale refused to respond. Mr. Shapiro has served defendants with his motion to compel, pursuant to Local Rule 104.8.a, and those issues will be before the Court for decision in the very near future.

On November 1, 2002, defendants did provide a document entitled "Profit and Loss by Job, January through September 2002." A copy is attached hereto and made a part hereof as Exhibit "B." The document is obviously incomplete. There is no question, however, that the parties had a contract. Not only does the $5,000.00 payment by Mr. Shapiro to BHCMSI support that conclusion, but on or about September 27, 2002, defendants paid Mr. Shapiro a total of $50,000.00, by separate checks drawn on accounts of BHCMSI and signed by Mr. Berry. checks were for $6,000.00 (labeled as "expenses") and $44,000.00 (labeled as "partial fees & grant writing"). Copies of the checks are attached hereto and made a part hereof as Exhibit "C."

4

Funds in these amounts do not change hands without any legal significance. Obviously, the payments to Mr. Shapiro, although labeled "partial" by the defendants at the time the payments were made, are evidence of the contract. The evidence in this case also demonstrates significant involvement by Mr. Shapiro in the business over an extended period of time, including participation at meetings related to the above-referenced subcontract with the University of Maryland. See, e.g.,Cal endar Entry Concerning Meeting of May 4, 2001 ("Lunch with Steve Shapiro for Montgomery County Project"), a copy of which is attached hereto and made a part hereof as Exhibit "D."

This is a case in which Mr. Shapiro's damages are substantial, but it is not a complex lawsuit. The only thing that has made it costly and time consuming is the defendants' efforts to avoid judgment, hide information related to the business, and prevent even the barest determination as to the value of the business created by the parties. This motion is part and parcel of an ongoing effort by the defendants to discourage Mr. Shapiro from protecting his rights to the full payment to which he is entitled

## ARGUMENT

**III.** **It Would Be Wholly Inappropriate, And Contrary To The Letter And Spirit of Fed. R. Civ. P. 42, To Bifurcate The Issues Of Liability And Damages In This Case**

Fed. R. Civ. P. 42(b) permits an action to be bifurcated. The Rule is designed, however, for cases much more complex than the one at bar. See, e.g.,S hetterly v. Raymark Industries, Inc., 7 F.3d 776, 782 (4th Cir. 1997) (upholding trial court's authority to bifurcate trial in "complex tort case" involving alleged asbestos exposure)

As a general matter, bifurcation is an extraordinary measure not usually employed. See F & G Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 387 (M.D.N.C. 1999) "Notwithstanding the broad discretion conferred by Rule 42(b), the bifurcation of issues and the

5

separate trial of them is not the usual course of events"; citation omitted). Parties seeking to have a case placed in the very unusual category of bifurcated proceedings have the burden of proof to show that bifurcation will promote the interests implicated by Rule 42(b), including, at a minimum, greater convenience to the parties, witnesses, jurors, and the court, and general expedition and economy. See id. (citations omitted). In addition, the parties seeking bifurcation must prove that a bifurcated proceeding will not result in undue prejudice to any party. Id. (citations omitted).

Bifurcation is a procedure normally reserved for cases involving especially complex or separable liability and damages issues. See Epstein v. Kalvin-Miller Int'l, Inc.,12 1 F. Supp. 2d 742, 749-50 (S.D.N.Y. 2000) (holding that the bifurcation of an employment discrimination suit into liability and damages phases was not necessary to avoid jury confusion, where the trial did not have the potential to be complex); Nat'l Union Fire Ins. Co. v. Dowd & Dowd, P.C., 191 F.R.D. 566, 567-68 (N.D. Ill. 1999) (holding that legal malpractice defendants were not entitled to bifurcation of liability and damages, where the issues were not complex and were closely intertwined); ABB Indus. Sys., Inc. v. Prime Tech., Inc., 32 F. Supp. 2d 38, 43-44 (D. Conn. 1998) (holding that piecemeal litigation is not favored, and bifurcation of issues for trial is inappropriate where the facts are so inextricably interwoven that separation is impossible or at least manifestly unfair; citations omitted); United Airlines, Inc. v. Wiener, 286 F.2d 302, 306 (9th Cir.) (holding that the trial court had erred in ordering the separation of liability from damages when the two issues were so interwoven that one could not be submitted to the jury independently of the other without confusion and uncertainty), cert. denied,36 6 U.S. 924 (1961).

This Court has denied motions to bifurcate where, as here, the case is not complex and the interests of Rule 42(b) are not advanced. See R.E. Linder Steel Erection Co. v. Wedemeyer,

6

Cernik, Corrubia, Inc., 585 F. Supp. 1530, 1534 (D. Md. 1984) (Murray, J.). In that case, Judge

Murray held as follows:

> The court believes that bifurcation is not appropriate in this case. The
> liability issues in this matter are much more complex, and will require
> comparatively more trial time, than the damages questions. Linder has indicated
> that it intends to use some of the same witnesses on both issues. DiPaula will also
> have at least one witness testifying on both matters. In light of these facts, the
> court believes that any savings in time and expense which might result from a
> bifurcation is wholly speculative. The court also believes that any prejudice
> which defendants may encounter as a result of the punitive damages claims and
> claims for two different types of injuries can be cured with instructions to the
> jury. Accordingly, in its discretion, the court will deny defendants' motion for
> bifurcation.

Similarly, in this case, any alleged savings in time and expense is wholly speculative. In many

instances, there is no way to purely separate issues, discovery, and evidence that is wholly

liability-related from that which is wholly damages-related. There is no such precise division

between these areas.

Defendants conducted the parties' business through BHCMSI, and BHCMSI has taken

responsibility for all of defendant Berry's actions. The information that Mr. Shapiro seeks from

BHCMSI is central to all of the issues in the case, many of the same witnesses will testify on

liability and damages issues, and there is no reason that this case cannot be litigated and tried to a

jury in a single proceeding – just as other similar cases are routinely handled in this Court.

In addition, where, as here, the request for bifurcation is an obvious tactical ploy adopted

well into the litigation, this Court has denied such requests. See, e.g., Wright Mfg., Inc. v. Great

Dane Power Equip., Inc., 1998 U.S. Dist. LEXIS 19484, **8-9 (D. Md. July 20, 1998)

(Chasanow, J.). A copy of this case is attached hereto and made a part hereof as Exhibit "E." In

Wright Mfg., Judge Chasanow held as follows:

7

> ... damages discovery is largely complete and this motion was filed some
> months after the initial scheduling order was entered. At this point, little would
> be gained by adjourning the trial after a liability finding so that the parties could
> conduct discovery exclusively on the issues of damages and willfulness. Indeed,
> completing all discovery before trial begins may be the most expeditious
> approach to this litigation. With discovery completed, the parties should be better
> able to estimate the likelihood of a liability finding and the amount of damages in
> the event of such a finding. Such an estimate may facilitate settlement and
> obviate the need for a trial altogether.

There are obvious parallels between that case and the matter at bar, and the same reasons militate

in favor of having this entire case litigated and adjudicated in a single proceeding

Finally, defendants' reliance upon Air-Shields, Inc. v. The BOC Group, 1992 U .S. Dist.

LEXIS 17398 (D. Md. Feb. 28, 1992), a patent infringement case, is misguided and easily

distinguishable. Courts have generally found that patent cases in particular deserve

consideration for bifurcation under Rule 42(b). See F & G Scrolling Mouse, 90 F.R.D. at 387

(multiple citations omitted). Given the complexity of those cases, they are very often appropriate

for bifurcated proceedings. This case, involving an agreement to start a business that was

formed three years ago, does not nearly approach the complexity of a patent case or similar

matter involving very large litigation. This motion should be denied.

**IV.    No Justification Is Provided For The Bald Request For A Stay Of Discovery**

Defendants' true motive for seeking a bifurcated proceeding is to try and also obtain a

stay with respect to any discovery that defendants deem related to damages in this case. See

Mem. at 9. No law whatsoever is cited in support of this remarkable request, which also ignores

the discovery rights provided by the Federal Rules of Civil Procedure and the Local Rules of this

Court.

The only substantive basis asserted by the defendants in support of their request for a stay

is that they feel that Mr. Shapiro "is a potential competitor." See id. This is baseless. Early on

8

in this case, the parties agreed upon and submitted to this Court a Stipulated Order Regarding

Confidentiality of Discovery Material, pursuant to Local Rule 104.13. All parties, including the

defendants, agreed expressly to the Stipulated Order and endorsed the Stipulated Order. The

Stipulated Order was then entered by this Court on March 14, 2003.

The Stipulated Order provides, in pertinent part, as follows:

> (c)    Information or documents designated as confidential under this
> Order shall not be used or disclosed by the parties or counsel for the parties or any
> persons identified in subparagraph (d) below for any purposes whatsoever other
> than preparing for and conducting the litigation in which the information or
> documents were disclosed (including appeals).

Thus, defendants have already agreed that this Stipulated Order protects them against the use of

information disclosed in discovery and designated as "confidential" for competitive purposes or

for any purposes other than preparing for and conducting this litigation. Defendants agreed to

the Stipulated Order as a means of resolving any such concerns. This protection was deemed

sufficient for the defendants in March when they consented to the Stipulated Order, and it is

sufficient protection now.

It is only at this point that defendants have concocted a baseless theory that Mr. Shapiro

is a "potential competitor," as yet another roadblock to providing the discovery that they owe

Mr. Shapiro. In fact, the theory that Mr. Shapiro is a competitor was not advanced by defendants

when they provided their discovery responses, such as they were, in March.

Their newfound claim is that Mr. Shapiro "is now operating, or is planning to establish a

business known as Social Systems Information Solutions, Inc. ("SSIS"), which will compete

with BHCMS." See Berry Affidavit, ¶ 5. Of course, no foundation is shown for Mr. Berry to

state his alleged "understanding" on this issue. See id. These are merely conclusions, without

any showing of proper basis for admissibility. (The entire affidavit is deficient in that respect, it

9

being sworn to "to the best of [Berry's] personal knowledge, information, and belief" instead of upon Berry's personal knowledge.)

At one point in BHCMSI's answers to interrogatories, which were executed by Berry under penalties of perjury, made reference to the business known as "SSIS." See Relevant Portions of BHCMSI's Answers to Plaintiff's First Set of Interrogatories, attached hereto and made a part hereof as Exhibit "F," at 8-9. There, the defendants described this entity as a potential enterprise to be formed by the parties. See id. No reference whatsoever was made to the allegation that Mr. Shapiro was planning to establish that entity to operate in competition with BHCMSI. Id.

In fact, at the time, documents generated by the parties referred to "Behavioral Health Care Management/DBA, Social Systems Information Solutions (SSIS)." See Winter 2000 Planning Document, a copy of which is attached hereto and made a part hereof as Exhibit "G." This newly-crafted assertion is obviously designed to grasp at another effort to avoid discovery and to force Mr. Shapiro to the expense of denying these frivolous claims, made even more so by the fact that the parties stipulated to a Protective Order that vitiates any such concern.

Furthermore, from a practical standpoint, there is no legitimate way to parse out which discovery may relate solely to damages, as opposed to issues that relate to liability. There is simply no legitimate way to cordon off "damages discovery" from information relevant to the other issues in the case. For example, defendants might seek to draw the line at any issue dealing with their "financial affairs." See Mem. at 9. Certain issues in this case, however, deal directly with defendants' financial activities and implicate both issues of liability and damages.

For example, part of the contract in this case required payment by Mr. Shapiro of an initial capital contribution of $5,000.00. Mr. Shapiro made that payment to BHCMSI, and

10

BHCMSI asked for and retained that payment. Defendants have refused to reveal any information about the funds, including the issues of where those funds were deposited, how those funds were accounted for, and where those funds are now located. Defendants did try to claim that the funds were returned to Mr. Shapiro, but they must admit that this is false.

The payment from Mr. Shapiro to BHCMSI is relevant to liability. Obviously, the fact that BHCMSI sought and accepted the $5,000.00 capital contribution from Mr. Shapiro makes it more likely that the contract was entered into as alleged by Mr. Shapiro. BHCMSI's accounting treatment and use of those funds also makes it more likely that the contract was entered into. Yet this aspect of the issue, defendants claim, should be shielded completely from discovery because it involves their "financial affairs." See Mem. at 9. This issue is also related to damages in other ways. Part of Mr. Shapiro's damages consist of his payment of $5,000.00 (an obvious financial detriment) and the equity position he was entitled as a result.

Similarly, dual liability/damages issues are presented by the payments totaling $50,000.00 to Mr. Shapiro. The fact that BHCMSI made payments to Mr. Shapiro out of the "gross profits" of BHCMSI is consistent with Mr. Shapiro's allegations in this case. Were Mr. Shapiro to confirm the source of the payments and the accounting treatment of those payments, this information would also be consistent with Mr. Shapiro's claims. Yet defendants have stonewalled on this issue, because they want to avoid producing any sort of financial or BHCMSI internal information in this case.

The folly in attempting to draw the line between liability and damages is that there is no precise line between the two issues. Defendants really want just to delay or avoid disclosing to Mr. Shapiro information that would undermine their protestations that there was no contract and no business, and that Mr. Shapiro has no viable claims. Knowing that Mr. Shapiro's $5,000.00

capital contribution, BHCMSI's solicitation and acceptance of those funds, BHCMSI's attempts to misstate that the funds were repaid to Mr. Shapiro, and the $50,000.00 paid to Mr. Shapiro are absolutely inconsistent with defendants' suggestions that there was no contract between the parties, defendants hope never to have to face these issues. Instead, they want to short-circuit a resolution on the merits by grinding Mr. Shapiro down in a time consuming and expensive multi-stage lawsuit as if this case involved a complicated patent or class action lawsuit.

## V.    Conclusion

For the foregoing reasons, plaintiff Stephen J. Shapiro respectfully requests that this motion be denied in its entirety.

Respectfully submitted,

JACKSON & CAMPBELL, P.C.


*/s/ Vernon W. Johnson, III*
_____
Vernon W. Johnson, III
Jackson & Campbell, P.C.
1120 Twentieth Street, N.W.
South Tower
Washington, D.C. 20036-3437
(202) 457-1600
(202) 457-1678 (telecopier)

Counsel for Plaintiff

OF COUNSEL:
Bruce S. Deming
One Courthouse Plaza
2200 Clarendon Boulevard
Suite 1102
Arlington, Virginia 22201
(703) 562-3379
(703) 852-3970 (telecopier)

12

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of May, 2003, I caused a copy of the foregoing

Plaintiff's Opposition to Defendants' Motion to Bifurcate Liability From Damages and Stay

Damages Discovery, Exhibits "A" through "G," and Proposed Form of Order to be served, by

first class mail, postage prepaid, upon the following:

> Andrew D. Levy, Esq.
> Brown, Goldstein & Levy, LLP
> 120 East Baltimore Street
> Suite 1700
> Baltimore, MD 21202-6701
>
> Counsel for Defendants

<div align="right">

*/s/ Vernon W. Johnson, III*

Vernon W. Johnson, III

</div>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| STEVEN J. SHAPIRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. MJG-02-3931 |
| | ) |
| RAY T. BERRY and | ) |
| BEHAVIORAL HEALTH CARE | ) |
| MANAGEMENT SYSTEMS, INC., | ) |

Defendants.

### ORDER

Upon consideration of the defendants' motion to bifurcate liability from damages and

stay damages discovery, the memoranda in support of and in opposition to the motion, and the

entire record herein, it is, this ___ day of _____, 2003, hereby

ORDERED, that the motion be, and it hereby is, denied in its entirety.

_____
Marvin J. Garbis
United States District Judge

COPIES TO:

Vernon W. Johnson, III
Jackson & Campbell, P.C.
1120 Twentieth Street, N.W.
South Tower
Washington, D.C. 20036-3437

Andrew D. Levy, Esq.
Brown, Goldstein & Levy, LLP
120 East Baltimore Street
Suite 1700
Baltimore, MD 21202-6701

STEVEN J SHAPIRO
12505 VILLAGE SQUARE TER
APT 101
NORTH BETHESDA MD 20852-1957

*Check expires 120 days after  06/12/00*

1972

999
56-1551/441

Date _____ 6/21/00

*Pay To The* _____ BHCMS , ANC.
*Order Of*

$ 5,000.00

FIVE THOUSAND AND 00/100 _____ *Dollars*

*This document contains an artificial watermark. Absence of this feature indicates a copy.*

FIRST USA.
Payable through:
First USA Management Services, Inc , Delaware, OH 43015
ESTABLISHMENT
*Memo* _____ OF 5315

*Signature* _____

⑈044115511⑈370456611972020⑈1972

Exhibit "A"

'2
J Basis

# Profit & Loss by Job
January 1 through November 1, 2002

| | Montgomery County (B) |
|---|---|
| **dinary Income/Expense** | |
| **Income** | |
| Income | 491,031.41 |
| **Total Income** | 491,031.41 |
| | |
| **Expense** | |
| Accounting | 0.00 |
| Accrued Expense | 20,000.00 |
| Administrative Expense | 49,103.15 |
| Advertising | 0.00 |
| Automobile Expense | 0.00 |
| Bank Service Charges | 0.00 |
| Benefit Expense | 0.00 |
| Bond | 100,000.00 |
| Computer Expense | 0.00 |
| Consulting Expense | 0.00 |
| Contract Labor | 0.00 |
| Depreciation Expense | 0.00 |
| Education & Training | 0.00 |
| Entertainment & Meals | 0.00 |
| Equipment Rental | 0.00 |
| Gifts Given | 0.00 |
| Insurance | 4,891.47 |
| Janitorial | 0.00 |
| Leased Labor | 0.00 |
| Legal Fees | 5,744.82 |
| Licenses and Permits | 0.00 |
| Miscellaneous | 0.00 |
| Office Expense | 0.00 |
| Office Supplies | 0.00 |
| On Line Services | 0.00 |
| Postage and Delivery | 0.00 |
| Printing and Reproduction | 0.00 |
| Professional Development | 0.00 |
| **Professional Fees** | |
|    Prof Fees - Steve Shapiro | |
|       Shapiro - Expenses | 6,000.00 |
|       Shapiro Fee | 10,000.00 |
|       Prof Fees - Steve Shapiro - Other | 34,000.00 |
|    Total Prof Fees - Steve Shapiro | |
| | |
|    Prof Fees - Eyanus | 299,784.92 |
|    Professional Fees - Other | 0.00 |
|   **Total Professional Fees** | |
| | |
| Program - Medical/Professional | 0.00 |
| **Rent** | |
|    Rent Chicago | 0.00 |
|    Rent Hollywood | 0.00 |
|    Rent - Other | 0.00 |
|   **Total Rent** | |
| | |
| Repairs | 0.00 |
| Supplies | 0.00 |
| Telephone | 0.00 |
| Travel | 0.00 |
| Utilities | 0.00 |
| **Total Expense** | |
| | |
| **Net Ordinary Income** | 37,993.03 |
| | |
| **Other Income/Expense** | |
|   **Other Income** | |
|    Interest Income | 0.00 |
|   **Total Other Income** | |
| | |
| **Net Other Income** | 0.00 |
| | |
| **Income** | 37,993.06 |

**Exhibit "B"**

Exhibit "C"

BHCMS, INC. 03-02
4600 SHERIDAN ST., 4TH FLOOR
HOLLYWOOD, FL 33021

BANK OF AMERICA
NATIONAL ASSOCIATION
DE FUNIAK SPRINGS, FL 32433-150
63-4/630

1840

9/27/02

PAY TO THE ORDER OF Steve Shapiro $ 6,000

Six thousand DOLLARS

MEMO Expenses

Ray Berry

⑈001840⑈ ⑆063000047⑆ 003063430436⑈

BHCMS, INC 1840

Steve Shapiro 6,000

BHCMS, INC.  03
600 SHERIDAN ST., 4TH FLOOR
HOLLYWOOD, FL 33021

BANK OF AMERICA
NATIONAL ASSOCIATION
DE FUNIAK SPRINGS, FL 32433-1501
63-4/630

9/27/02

PAY TO THE
ORDER OF  _Steve Shapiro_____  $ 44,000

_forty four thousand_____ DOLLARS

MEMO _Partial FEE's & grant writing_    _Ray Berry_

⑈001839⑈ ⑇063000047⑇ 003063430436⑈

---

BHCMS, INC.

Steve Shapiro

1839

44,000

Calendar Entry:
## Meeting

| | | | | |
|---|---|---|---|---|
| Subject: | Lunch with Steve shapiro for Montgomery County Project | | Location: | |
| Begins: | Fri 05/04/2001 | 02:30 PM | Entry type: | ☒ Meeting |
| Ends: | Fri 05/04/2001 | 05:00 PM | | |
| Chair: | Mike Miller/WashingtonDC/USConnect | | | |

Invitations already sent

To: Kate Lubanovic/WashingtonDC/USConnect@RIVERBEND, Paul Couchoud/WashingtonDC/USConnect@RIVE
Seston/WashingtonDC/USConnect@RIVERBEND
cc:

☐ Pencil In            Time will appear free to others.
☐ Mark Private       Others cannot see any details about this event.
☐ Notify me          Have Notes notify you before the event.
Categorize:

Description:

Exhibit "D"

LEXSEE 1998 U.S. Dist. LEXIS 19484

**WRIGHT MANUFACTURING, INC. v. GREAT DANE POWER EQUIPMENT INC., et al.**

**Civil Action No. DKC 97-2128**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

*1998 U.S. Dist. LEXIS 19484; 48 U.S.P.Q.2D (BNA) 1698*

**July 20, 1998, Decided**

**July 22, 1998, Filed, Entered**

**DISPOSITION:**
[*1]    Plaintiff's Motion to Compel GRANTED; Defendants' Motion to Bifurcate DENIED.

**COUNSEL:**
For WRIGHT MANUFACTURING, INC., plaintiff: Geoffrey R. Myers, Myers, Liniak & Berenato, Joseph A. Rhoa, Liniak & Berenato, LLC, Bethesda, MD.

For GREAT DANE POWER EQUIPMENT, INC., HUNCILMAN, INC., defendants: John Paul Moran, Christopher Jacob Hamaty, Mark Lee Hogge, MORGAN & FINNEGAN, LLP, Washington, DC.

For GREAT DANE POWER EQUIPMENT, INC., HUNCILMAN, INC., defendants: Nicholas A. Kees, William E. Duffin, Law Office, Milwaukee, WI.

For GREAT DANE POWER EQUIPMENT, INC., HUNCILMAN, INC., counter-claimants: John Paul Moran, Christopher Jacob Hamaty, Mark Lee Hogge, MORGAN & FINNEGAN, LLP, Washington, DC.

For GREAT DANE POWER EQUIPMENT, INC., HUNCILMAN, INC., counter-claimants: Nicholas A. Kees, William E. Duffin, Law Office, Milwaukee, WI.

For WRIGHT MANUFACTURING, INC., counter-defendant: Geoffrey R. Myers, Myers, Liniak & Berenato, Joseph A. Rhoa, Liniak & Berenato, LLC, Bethesda, MD.

**JUDGES:**
DEBORAH K. CHASANOW, United States District Judge.

**OPINIONBY:**
DEBORAH K. CHASANOW

**OPINION:**

**MEMORANDUM OPINION**

Presently pending and ready for resolution are two somewhat intertwined motions: [*2] (1) Plaintiff's motion to compel Defendants to provide full disclosure of an opinion letter written by their attorney regarding the patents at issue in this case ("the Opinion Letter") or to bar use of the letter at trial and (2) Defendants' motion to bifurcate liability from damages and willfulness and staying all discovery associated with damages and willfulness. Specifically, Defendants would like to delay the disclosure of the Opinion Letter until the issue of willfulness is before the Court.

For the reasons that follow, Plaintiff's motion to compel will be granted and Defendants' motion to bifurcate will be denied. No hearing is necessary, and the Court now rules pursuant to Local Rule 105.6.

*Background*

Plaintiff has sued Defendants for willful infringement of U.S. Patent *5,507,138* (the *'138* patent) and patent *5,600,044* (the *'044* patent)(collectively "the Wright Patents"). Both patents regard a lawn mower with a riding platform between or behind the rear wheels. Defendants deny that they infringed the patents and further contend that the patents are invalid and that Plaintiff is barred from obtaining relief by the equitable doctrines of laches, estoppel and waiver. [*3]

Discovery is under way. n1 As of the time the pending motions were filed, considerable documentary discovery had occurred and the parties were taking depositions. It is uncontested that damages discovery is well advanced, if not nearly complete. Plaintiff claims that its damages expert has nearly completed a draft of his report. Before discovery closes, however, Plaintiff would like to obtain a copy of the Opinion Letter, which it claims is relevant to the issues of willfulness and liability. Defendants do not dispute that the Opinion Letter is relevant to the issue of willfulness. Indeed, they intend to rely on the letter

**Exhibit "E"**

Case 1:02-cv-03931-MJG    Document 20    Filed 05/12/2003    Page 22 of 26

Page 2

1998 U.S. Dist. LEXIS 19484, *3; 48 U.S.P.Q.2D (BNA) 1698

if the issue of willfulness is tried. Nor do they deny that it is relevant to liability, but they claim that the letter is protected by the attorney–client privilege and would like to avoid disclosing it if willfulness need not be tried.

> n1 The discovery deadline has now passed, but no status reports were received. If these rulings necessitate an extension of the discovery deadline, counsel may notify the court.

[*4]

Defendants propose that the parties complete discovery on liability and the Court conduct a trial on that issue alone. If the Defendants are found liable, the parties would conduct further discovery and the Court would conduct a subsequent trial on damages and willfulness. By so doing, Defendants hope to avoid disclosure of the Opinion Letter unless such disclosure redounds to their benefit at a willfulness trial.

*Motion to Compel*

Understandably, Defendants would like to use the Opinion Letter when it suits their purposes and suppress it when it does not. The attorney–client privilege serves the purpose of encouraging individuals to consult with counsel regarding the legality of contemplated conduct. *See Upjohn Co. v. United States, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)*(purpose of privilege "is to encourage full and frank communication between attorneys and their clients"). Despite its usefulness, however, the privilege "impedes [the] full and free discovery of the truth" and is not favored by the federal courts. *Herbert v. Lando, 441 U.S. 153, 175, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979)*. Indeed, courts are to construe the privilege as narrowly [*5] as is consistent with its purpose. *United States v. Oloyede, 982 F.2d 133, 141 (4th Cir. 1992)*. Accordingly, "selective disclosure for tactical purposes waives the privilege." *United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)*.

Admittedly, this case differs from the typical selective disclosure case. Ordinarily, a party seeks to offer into evidence only those portions of a privileged communication that are helpful to the party's case. In contrast, the present Defendants seek to control the timing of the disclosure rather than control what portions of the letter will be disclosed. From the perspective of fairness, however, there is little difference. Whether a party picks and chooses what part of a communication to disclose or whether it chooses the timing of the disclosure, the disclosure is still selective and calculated for tactical advantage. Therefore, it runs counter to the purposes of the privilege and thus waives the privilege.

It is true that a party accused of patent infringement commonly faces the dilemma now faced by Defendants. When introducing a new product, it is standard practice for manufacturers to ask their lawyers whether the product infringes [*6] any existing patents. Such consultation has the benefit of preventing infringements before they occur and serves the purposes of the attorney–client privilege.

Such opinions are also frequently helpful at a subsequent trial. To avoid an award of treble damages for "willful" infringement, defendants often rely on the prior opinion of patent counsel to establish that the product in question was marketed in reliance on the advice of counsel and that any infringement was unintentional. The Federal Circuit has observed that this puts patent defendants in a quandary: they can use their lawyer's opinion to dispute willfulness and thereby waive privilege, or they can forego using it and run the risk of being found to have willfully infringed the patent. *Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643–44 (Fed. Cir. 1991)*.

This dilemma is not unique to patent defendants. Any party contemplating the use of privileged materials must weigh the value of waiving privilege against the risk of not waiving it. Moreover, applying the waiver rule to patent defendants is not uniquely likely to undermine the objectives of the attorney–client privilege. Even if use at trial waives the privilege, manufacturers [*7] would still be ill-advised to launch a new product without first consulting their patent lawyers. Indeed, applying the waiver rule to patent defendants may actually improve adherence to the law. A defendant is most likely to want to suppress an opinion that suggests the proposed product violates a valid patent. Therefore, if defendants knew that they would have to waive privilege at the liability stage in order to use an opinion to contest willfulness, perhaps they would pay greater heed to the advice contained in that opinion. After all, a manufacturer has no reason to suppress a patent opinion that says the proposed product is legitimate.

Defendants, however, have yet to waive their privilege, and the choice to do so remains exclusively theirs. Plaintiff mistakenly contends that Defendants waived their privilege to the letter when they referred to it in response to interrogatories that asked Defendants to "identify all opinions of counsel regarding validity or infringement issues relating to any of the patents-in-suit." Waiver of the attorney–client privilege requires an actual disclosure of the privileged communication outside the attorney-client relationship. *Jones, 696 F.2d* [*8] *at 1072.* Mere reference to a privileged communication does not constitute a disclosure and does not waive the privilege. If that were true, the typical privilege log would waive privilege to every document listed on it.

But the time has come for Defendants to decide

Case 1:02-cv-03931-MJG    Document 20    Filed 05/12/2003    Page 23 of 26

Page 3

1998 U.S. Dist. LEXIS 19484, *8; 48 U.S.P.Q.2D (BNA) 1698

whether or not they will use the Opinion Letter. If Defendants intend to rely on the letter, Plaintiff is entitled to its full discovery. *Keyes Fibre Co. v. Packaging Corp. of America, 763 F. Supp. 374, 376 (N.D. Ill. 1991).* If the Defendants choose not to disclose the letter and not to allow Plaintiff to conduct appropriate discovery, they will not be allowed to rely on it at any stage of the trial, including the inquiry into willfulness.

*Motion to Bifurcate*

Under Rule 42(b), the Court may, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," order separate trials of any claims or issues. The Court has broad discretion in deciding whether to bifurcate claims for trial. *Dawson v. Prince George's County, 896 F. Supp. 537, 539 (D. Md. 1995).* Defendants contend that bifurcation of the issues of damages and willfulness will result in significant [*9] savings to the parties and Court alike. Defendants further argue that the issue of liability is antecedent to and legally and factually independent of both damages and willfulness. Defendants conclude therefore that if the Court holds a trial on liability and finds for Defendants, no trial on damages and willfulness is needed.

Defendants' argument is undone by the fact that damages discovery is largely complete and this motion was filed some months after the initial scheduling order was entered. At this point, little would be gained by adjourning the trial after a liability finding so that the parties could conduct discovery exclusively on the issues of damages and willfulness. Indeed, completing all discovery before trial begins may be the most expeditious approach to this

litigation. With discovery completed, the parties should be better able to estimate the likelihood of a liability finding and the amount of damages in the event of such a finding. Such an estimate may facilitate settlement and obviate the need for a trial altogether. n2

n2 The course of trial proceedings will be discussed at the pre-trial conference.

[*10]

A separate order will be entered.

DEBORAH K. CHASANOW

United States District Judge

**ORDER**

In accordance with the accompanying Memorandum Opinion, IT IS this 20th day of July, 1998, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff's Motion to Compel BE, and the same hereby IS, GRANTED;

2. Defendants' Motion to Bifurcate BE, and the same hereby IS DENIED; and

3. The clerk is directed to mail a copy of this Order and the accompanying Memorandum Opinion to counsel for the parties.

DEBORAH K. CHASANOW

United States District Judge

information (a) that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence, (b) production of which is unfairly burdensome, and (c) that is confidential and proprietary in nature.

**INTERROGATORY NO. 14**:  Please identify (as defined in the instructions) all entities and persons who have done business with you at any time from 1997 to present.

**ANSWER TO INTERROGATORY NO. 14**: On advice of counsel, defendant objects and refuses to provide the information sought by this Interrogatory on the grounds that it seeks information (a) that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence, (b) production of which is unfairly burdensome, and (c) that is confidential and proprietary in nature.

**INTERROGATORY NO. 15**:  Please state the precise disposition of the $5,000.00 paid to you by Mr. Shapiro in June 2000, including the accounting treatment, account number and bank into which the funds were deposited, and current location of those funds.

**ANSWER TO INTERROGATORY NO. 15**: On advice of counsel, defendant objects and refuses to provide the information sought by this Interrogatory on the grounds that it seeks information (a) that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence, (b) production of which is unfairly burdensome, and (c) that is confidential and proprietary in nature. Without waiving the foregoing objections, defendant answers that sometime in 2000, plaintiff informed Ray Berry that plaintiff believed he was about to be terminated from his position with the United States Department of Health and Human Services and suggested that upon his leaving the government he and Berry should join with several other individuals to form a company named Social Systems Information Solutions ("SISS") whose purpose would be to develop software to market to state and local criminal justice agencies. To investigate the feasability of forming such a company – including the willingness of certain critical individuals to leave their existing positions and join the new venture   Berry incurred substantial costs, costs which were borne by Berry's company, Behavioral Health Care Management Systems,

8

Inc. ("BHCMS"). To induce Berry to continue his efforts, plaintiff agreed to reimburse BHCMS for a portion of those and future costs. The check was deposited into BHCMS' account on or about June 21, 2000. Shortly thereafter, however, a meeting was held with the individuals whose participation was considered critical to the new venture and it became apparent that the proposed company that plaintiff and Berry had discussed was not viable because, *inter alia*, those individuals were not prepared to leave their current positions. On or about July 26, 2000, therefore, BHCMS tendered check no. 1159 to plaintiff in refund of the money plaintiff had advanced.

**INTERROGATORY NO. 16**: Please state with particularity all contracts of any kind, whether written or verbal, entered into by you at any time.

**ANSWER TO INTERROGATORY NO. 16**: On advice of counsel, defendant objects and refuses to provide the information sought by this Interrogatory on the grounds that it seeks information (a) that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence, (b) production of which is unfairly burdensome, and (c) that is confidential and proprietary in nature.

**INTERROGATORY NO. 17**: Please state with particularity all proposals of any kind, whether written or verbal, generated or made by you at any time.

**ANSWER TO INTERROGATORY NO. 17**: On advice of counsel, defendant objects and refuses to provide the information sought by this Interrogatory on the grounds that it seeks information (a) that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence, (b) production of which is unfairly burdensome, and (c) that is confidential and proprietary in nature.

9

*Behavioral Health
Care Management/
DBA, Social Systems Information Solutions
(SSIS)*

**OXFORD HOUSE INC.
OFFICE AUTOMATION PROJECT
&
ONLINE COMMUNITIES**

**Planning Document**

**Prepared by:
Social Science Information Solutions and Sysinct, a division of
IKON Office Solutions Technology Services
Winter 2000**

The enclosed material is proprietary to SSIS and Sysinct/ A Division of **IKON Office Solutions Technology Services, Inc. (IKON)** and is therefore copyrighted. This document may not be disclosed in any manner to anyone other than the addressee and the employees or representatives of the addressed firm who are directly responsible for evaluation of its contents. This document may not be used in any manner other than for the purpose it was distributed. Any unauthorized use, reproduction or transmission in any form is strictly prohibited. By signing this agreement, you are acknowledging the acceptance of the services outlined within this proposal.
Copyright 2000.

S1272

Exhibit "G"